**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| ANTHONY CASTELVETERE, | ) | CASE NO: 1:12-CV-2453 |
| | ) | |
| Plaintiff, | ) | JUDGE WELLS |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | VECCHIARELLI |
| PHIL MESSER, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | **REPORT AND RECOMMENDATION** |

This case is before the undersigned United States Magistrate Judge upon referral for the preparation of a Report and Recommendation on: (1) the motion dismiss filed by Defendant Ohio State Highway Patrol ("OSHP") Captain James Wernecke ("Wernecke") (Doc. No. 20); and (2) the motion for summary judgment filed by Defendants City of Mansfield ("City") and Phil Messer ("Messer"), the former chief of police for the City (collectively, "City Defendants").   (Doc. No. 26).  In this matter, Plaintiff Anthony Castelvetere ("Plaintiff" or "Castelvetere") alleges that the Defendants retaliated against him for exercising his First Amendment rights and caused him to be terminated from his position as an inspector for the State of Ohio Fire Marshal's Office ("Fire Marshal's Office").

For the reasons set forth below, the Magistrate Judge recommends that: (1) the John Doe Defendants be DISMISSED; (2) Plaintiff's claims against Wernecke be DISMISSED for lack of prosecution; and (3) the City Defendants' Motion for Summary Judgment (Doc. No. 26) be GRANTED in part and DENIED in part: specifically, granted with respect to Plaintiff's § 1983 claims (Counts I, II, III and IV), and denied with respect

to the Plaintiff's state law claims (Counts V and VI); and (4) the district court judge

decline to exercise supplemental jurisdiction over Plaintiff's state law claims (Counts V

and VI) and dismiss those claims.

## I. Factual Background

The following facts are not in dispute:

In 2003, Plaintiff began working as an assistant state fire inspector for the Fire

Marshal's Office, with responsibility for fire inspections in Richland, Knox, Morrow,

Delaware and Franklin counties.  (Declaration of Plaintiff ("Pl. Decl.") at ¶ 1, Doc. No.

31-1.)  In 2005, Plaintiff and his wife opened Safety Service Attire, LLC ("SSA"), a

business located in Mansfield that sells uniforms, equipment and other gear used by

safety service personnel.  (*Id.* at ¶ 2.)  Thereafter, Plaintiff and his wife made multiple

complaints to City officials that City police officers did not buy uniforms and equipment

from SSA, but, rather, purchased their uniforms and equipment from Richland Uniform,

a business located outside of the City.  (*Id.* at ¶¶ 3-4.)

On August 5, 2008, Plaintiff and his wife attended a City Council meeting, where

they alleged that Messer had pressured City police officers to purchase their uniforms

and equipment from a company called Richland Uniform because Messer had a

longstanding friendship with the owner of that business.  (Pl. Decl. at ¶ 8.)  Defendant

Messer was present at the meeting.  (*Id.*)  The City's mayor directed Defendant Messer

to investigate the matter and meet with Plaintiff and his wife after the investigation.  (*Id.*

at ¶ 9.)  The following day, the local newspaper reported that Plaintiff had complained

at the meeting about favoritism by Defendant Messer in awarding contracts.  (*Id.* at ¶

-2-

10.)

On August 7, 2008, Defendant Wernecke, who was working at the Ohio Inspector General's Office, sent an e-mail to an employee of the Ohio Inspector General's Office ("OIG"), stating that Wernecke had received an anonymous phone call on that date.   (Affidavit of Defendant Wernecke ("Wernecke Aff.") at ¶¶ 3-5, Doc. No. 26-2; August 7, 2008 Wernecke E-mail, Doc. No. 26-1.)  According to the e-mail, the anonymous caller stated that Plaintiff was conducting private business during his state work hours:

> I received a call from an anonymous source who informed me that a Tony Castelvetere, an employee of the State Fire Marshalls [*sic*] office in Richland County[,] is conducting private business on state time and with the use of state equipment.  Reportedly Tony and his wife are owners of Safety Service Attire of 214 Lexington, Ave in Mansfield. Reportedly Castelvetere is a former fire fighter who is visiting the local township fire departments and soliciting or conducting private business while on state time.  It was also alleged that he is an employee of Mansfield Motor Sports Raceway and spent countless hours in making preparations for the NASCAR race on state time as well.

(August 7, 2008 Wernecke E-mail, Doc. No. 26-1.)

On September 17, 2009, while Plaintiff was serving with the Air National Guard in Iraq, the OSHP executed a search warrant on Plaintiff's home.  (Deposition of Plaintiff ("Pl. Dep.") at 33:1-6, Doc. No. 26-6.)  Plaintiff never ascertained from any source the substance of the search warrant.  (*Id*. at 33:9-34:13.)  On October 21, 2010, a Richland County, Ohio grand jury issued an indictment charging Plaintiff with felony offenses of theft in office, tampering with records and theft of a motor vehicle.  (*Id*. at 37:24-38:10.)  On May 13, 2011, Plaintiff pleaded guilty to misdemeanor charges of

dereliction of duty relating to misuse of State time, and unauthorized use of a motor vehicle.  (*Id.* at 38:14-24.)  On August 12, 2011, the Fire Marshal's Office terminated Plaintiff's employment as a state fire inspector.  (Pl. Decl. at ¶ 13, Doc. No. 31-1.)

On September 1, 2011, Plaintiff made a public records request to several state agencies, including the OIG. (Pl. Decl. at ¶ 14.)  On September 22, 2011, Plaintiff received documents from the OIG, including the August 7, 2008 e-mail from Wernecke to the OIG.  (*Id.*)  According to Plaintiff, this e-mail revealed "for the first time that the investigation and indictment against [Plaintiff] stemmed from an 'anonymous' phone call made to Defendant James Wernecke on August 7, 2008."  (*Id.*)

## II.  Overview and Procedural Background

### A.    Complaint, Amended Complaint and Discovery Orders

On October 1, 2013, Plaintiff filed his Complaint, which named multiple Jon Doe defendants.  (Doc. No. 1.)  At a January 2013 case management conference, the parties agreed to engage in limited initial discovery regarding the issues of qualified immunity and the relevant statutes of limitation.  (Case Management Conference Order, Doc. No. 11.)

In his Amended Complaint, Plaintiff alleges the following facts: Although he was aware that the OSHP executed a search warrant on his home in September 2009, he never ascertained the reason why the warrant was issued.  (Doc. No. 14.)  After he was indicted in October 2010, he "vigorously defended the charges against him" and ultimately pleaded guilty to two misdemeanors, one "related to his misuse of state time" and the other involving the "unauthorized use of a motor vehicle."  (*Id.*)  On August 12,

2011, the State Fire Marshal terminated his employment "based in part on Plaintiff's convictions." (*Id.*)  On September 1, 2011, Plaintiff made a public records request to the OIG.  (*Id.*)  He received documents responsive to that request on September 22, 2011 and, as a result of reviewing those documents, "learned for the first time . . . that the genesis of the [OSHP's] investigation of him" was the August 7, 2008 e-mail from Wernecke to the OIG.  (*Id.*)  Plaintiff based this conclusion on the proximity of the date of the e-mail (August 7, 2008) to the date of his public complaints regarding Messer at the Mansfield City Council meeting (August 5, 2008), as well as the fact that Wernecke "had been a commander of the [OSHP] post in Mansfield, Ohio, and that he is . . . an associate, friend and ally of Defendant Messer." (*Id.*)  "Based on this information, Plaintiff formed the belief in September 2011 that Defendant Messer was more probably than not the anonymous source who contacted and provided false information to Defendant Wernecke, and that he had initiated a criminal investigation of Plaintiff because Plaintiff had spoken out and challenged Defendant Messer's authority at the City Council meeting." (*Id.*)

Plaintiff asserts six causes of action in his Amended Complaint.  Count One alleges a § 1983 claim against Messer, on the basis that Messer retaliated against Plaintiff because Plaintiff exercised his First Amendment rights by petitioning "the City of Mansfield . . . to redress his grievances." (Doc. No. 14 at ¶¶ 42-52.)  According to the Amended Complaint, "the actions and conduct of Defendant Messer" caused Plaintiff to suffer an injury that would likely chill persons of ordinary firmness from continuing to engage in such constitutionally protected activities." (*Id.* at ¶ 50.)  Plaintiff,

however, does not specify precisely what injury arose out of Messer's "actions and conduct.

In Count Two, Plaintiff asserts a First Amendment retaliation claim, under § 1983, against the City of Mansfield.  (*Id*. at ¶¶ 53-60.)  Specifically, Plaintiff alleges that:

> In his capacity as Chief of Police of the City of Mansfield, Messer had the power to establish policy for the City of Mansfield and the power to adopt, cause and direct the particular action described above, to wit, communicating to Defendant Wernecke a false accusation for the purpose of retaliating against Plaintiff.

(*Id*. at ¶ 54.)  According to Plaintiff, because Messer was the chief of police, his "edicts and acts may be fairly said to represent official City policy," and Mansfield "clothed Messer was the power and authority to act under color of state law and placed him in a position to retaliate against his perceived enemies and to act freely in doing so."  (*Id*. at ¶ 57.)  Plaintiff contends that Messer and the City retaliated against him for exercising his First Amendment rights.  (*Id*. at ¶ 59.)  In this Count, however, he does not allege that this retaliation caused him any injury.

In Count Three, Plaintiff alleges a § 1983 substantive due process claim against Messer and the City.  (Doc. No. 14 at ¶¶ 61-64.)  Specifically, Plaintiff purports that "[t]he conduct of Defendants Messer and the City constitutes an egregious abuse of government power that would shock the conscience of ordinary and reasonable persons," and which violated Plaintiff's substantive due process rights.  (*Id*. at ¶¶ 62-63.)  Plaintiff, however, fails to specify which conduct by the City and Messer violated his substantive due process rights, or how that conduct was sufficiently egregious to

-6-

shock the conscience of ordinary and reasonable persons.

In Count Four, Plaintiff asserts a § 1983 conspiracy claim against Messer and Wernecke.  (*Id*. at ¶¶ 65-71.)  Specifically, Plaintiff contends that Messer was the anonymous source who contacted Wernecke, and that Wernecke "agreed with Messer to engage the State of Ohio's law enforcement powers for the purposes of retaliation against Plaintiff."  (*Id*. at ¶ 67.)  Messer allegedly "acted in furtherance of the conspiracy by contacting Wernecke and by communicating with [unidentified defendants] in order to influence or direct the investigation toward prosecution."  (*Id*. at ¶ 68.)  Wernecke allegedly furthered the conspiracy by "by sending the e-mail" and by "communicating with John Does I-IV, being unknown persons who investigated or directed the investigation of Plaintiff, in order to influence or direct the investigation toward prosecution."  (*Id*. at ¶ 69.)  Plaintiff contends that he "suffered damages as a result" of the conspiracy, but does not specifically recite or describe those damages in this Count.

In Count Five, Plaintiff alleges a state law claim for tortious interference with employment relations against Messer.  (Doc. No. 14 at ¶¶ 72-79.)  Specifically, Plaintiff alleges that Messer: (1) knew that Plaintiff worked for the State of Ohio; (2) knew that Wernecke would "cooperate with him and that an investigation of Plaintiff would be initiated;" (3) intended to cause Plaintiff to be criminally prosecuted and terminated from his state employment; (4) acted without privilege and with malicious intent.  (*Id*. at ¶¶ 73-78.)  Again, Plaintiff contends that he "suffered damages, and . . . will continue to suffer damages, as a direct result of Defendant Messer's tortious conduct," but does not specifically describe the damages or injury arising out of the conduct described in Count

Five.

Finally, in Count Six of the Amended Complaint, Plaintiff asserts a state law civil conspiracy against Messer, Wernecke and the John Doe defendants, contending that they "unlawfully conspired to cause the termination of Plaintiff's employment with the State of Ohio." (*Id.* at ¶¶ 80-83.)  Although he contends that he "suffered damages as a result," he does not specify or describe the damages attributable to the civil conspiracy.

In January 2013, noting that Plaintiff's Amended Complaint named multiple John Does as defendants, the Court issued an order requiring Plaintiff to identify the John Doe Defendants by March 26, 2013.  (Doc. No. 15.)  To date, Plaintiff has not done so.

**B.     Motion to Dismiss**

In March 2013, Defendant Wernecke filed a motion to dismiss Plaintiff's Amended Complaint.  (Doc. No. 20.)  Wernecke argues that: (1) the § 1983 conspiracy claim is not timely with respect to Wernecke or, in the alternative, Plaintiff did not properly plead the claim; and (2) the state law civil conspiracy claim fails for lack of subject matter jurisdiction because Plaintiff did not raise it in the Ohio Court of Claims. (*Id.*)  To date, despite receiving an extension of time until May 28, 2013 within which to do so (doc. no. 23, entry at 04/03/2013), Plaintiff has not responded to that motion.

**C.     Motion for Summary Judgment**

In May 2013, the City Defendants filed a motion for summary judgment.  (Doc. No. 26.)  With respect to Plaintiff's § 1983 claims, the City Defendants make two contentions.  First, they contend that Messer is entitled to qualified immunity.  In support of this argument, the City Defendants cite to case law discussing qualified

-8-

immunity.  However, rather than raising a legal argument based on that case law, the City Defendants assert the fact-based argument that Plaintiff has failed to offer sufficient evidence to demonstrate that it was Messer who made the anonymous phone call.  Second, the City Defendants contend that the § 1983 claims are not timely because Plaintiff did not bring them within the two-year period of limitations applicable to such claims.  According to Defendants, the period of limitations began to run on the date of the anonymous e-mail message – August 7, 2008 – and, thus, the October 1, 2012 Complaint in this matter was not timely.  With respect to Plaintiff's state law claims, the City Defendants argue that  the applicable  period of limitation is four years, and that the relevant period began to run on August 7, 2008, rendering Plaintiff's October 2012 Complaint untimely.

In his opposition to the motion for summary judgment, Plaintiff contends that, because Messer denies that he placed the August 2008 anonymous phone call, he cannot assert a qualified immunity defense.  (Doc. No. 31.)  Further, Plaintiff asserts that the City Defendants' fact-based arguments regarding whether Messer was the anonymous caller are premature, given the limited scope of the initial discovery to which the parties agreed.  With respect to the legal issue of qualified immunity, Plaintiff contends that Messer violated Plaintiff's clearly established "right to be free from retaliation by a state actor for speaking out."  (Doc. No. 31 at 12.)

With respect to the relevant statutes of limitation, Plaintiff first contends that his indictment triggered the running of the statute of limitations, as he asserts that his "Amended Complaint makes clear that his injuries stemmed from his indictment and

-9-

prosecution," and that, because the indictment issued during "the last week of October 2010," his Complaint – filed on October 1, 2012 – was timely with respect to the § 1983 claims.  (*Id.* at 15.)  With respect to his state law claims, however, Plaintiff's argument is different.  Rather than asserting that his indictment is the relevant event that initiated the running of the period of limitations, he contends that his termination from his fire inspector position signaled the beginning of the relevant period of time.  In his opposition, Plaintiff contends that  "[t]he State of Ohio terminated Plaintiff from employment as a deputy fire marshal on May 13, 2011," and, because the City Defendants concede that the relevant period of limitations is four years, he timely filed his state law claims.  (*Id.*)

In their reply in support of their motion for summary judgment, the City Defendants – for the first time – analyze the legal issue of qualified immunity in the context of this case.  (Doc. No. 32.)  They argue that, even if Messer did make the anonymous phone call, Messer is entitled to qualified immunity because Plaintiff does not have a clearly established constitutional right "to be free from retaliatory arrest supported by probable cause."  (Doc. No. 32. at 7.)

In his sur-reply,[1] Plaintiff argues that Messer is not entitled to qualified immunity because he lacked probable cause for the information set forth in the anonymous phone call.  (Doc. No. 38.)  Specifically, Plaintiff disputes the City Defendants'

---

[1] Because the City Defendants first raised their legal argument regarding qualified immunity (rather than the issue of whether Messer made the anonymous phone call) in their reply in support of their motion for summary judgment, the Court instructed Plaintiff to file a sur-reply addressing the argument.  (Doc. No. 35.)

-10-

characterization of the facts with respect to whether Messer had probable cause to make the anonymous phone call.  Plaintiff recites only a portion of the allegations made in the anonymous call and alleges that Messer should have understood that Plaintiff's presence at the racetrack while preparing for the NASCAR race was related to his state employment:

> Messer had no reason to believe that Plaintiff was at the racetrack on personal business while on state time.  It was a NASCAR race.  Fires break out at NASCAR races.  Any reasonable person understands why a deputy fire marshal would be at a racetrack prior to a NASCAR event.  It was impossible that an officer of the law, like Messer, would suspect Plaintiff of wrongdoing.  Messer could not have had probable cause because any reasonable person would know why the deputy fire marshal assigned to the Mansfield area would be present for NASCAR event preparations in Mansfield.  The fact that Messer made the call anonymously further tends to prove that he knew what he was doing was wrong and, therefore, that he did not have probable cause.

(Doc. No. 38 at 1-2.)  According to Plaintiff, because Messer should have understood that Plaintiff was working as a state fire inspector at the racetrack, Messer did not have probable cause to make the anonymous phone call, and, thus, the phone call violated Plaintiff's constitutional rights.

While the Amended Complaint may be elusive with regard to the injury suffered by Plaintiff, this Court accepts the allegations developed in Plaintiff's briefing that, with respect to his § 1983 claims, his injury is the prosecution and indictment and, with respect to his state law claims, his injury is his termination from his state position.

### III.  John Doe Defendants/Motion to Dismiss

To date, Plaintiff has not identified the John Doe Defendants named in his

Amended Complaint.  The Court instructed Plaintiff to do so by March 26, 2013.

Accordingly, it is recommended that the John Doe Defendants be dismissed for failure

to comply with the Court's case management order.  *See* Fed. R. Civ. P. 16(f)(1),

37(b)(2)(A)(v).

Similarly, despite requesting and receiving an extension of time within which to

respond to Wernecke's motion to dismiss, Plaintiff has failed to file any opposition to

that motion.  Accordingly, this Court recommends that Plaintiff's claims against

Wernecke be dismissed for lack of prosecution. *See* Fed. R. Civ. P. 41(b).

### IV.  Motion for Summary Judgment

**A.** **Standard of Review**

Summary judgment is appropriate when there is no genuine dispute as to any

material fact and the moving party is entitled to judgment as a matter of law.  Fed. R.

Civ. P. 56(a).  The moving party can meet this burden in two ways:  by presenting

sufficient evidence to indicate there is no genuine issue of material fact; or by arguing

that the nonmoving party, after adequate time for discovery, fails to show sufficient

evidence to establish the existence of an element essential to that party's case, and on

which that party will bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S.

317, 323 (1986).

Once the moving party has met its burden, the nonmoving party may not rest

upon the mere allegations or denials of its pleadings, but must set forth through

competent and material evidence of specific facts showing that there is a genuine issue

for trial.  *See Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).  The trial

court has no duty to search the entire case record to establish that it is bereft of a genuine issue of material fact.  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476 (6th Cir. 1989).  The nonmoving party has an affirmative duty to direct the court's attention to specific evidence upon which it seeks to rely.  *Al-Qudhai'een v. Am. W. Airlines, Inc.*, 267 F. Supp. 2d 841, 845 (S.D. Ohio 2003) (citing *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001)).  The lack of such a response by the nonmoving party may result in an automatic grant of summary judgment.  *Reeves v. Fox Television Network*, 983 F. Supp. 703, 709 (N.D. Ohio 1997).

In reviewing summary judgment motions, a court must view all facts and inferences drawn therefrom in a light most favorable to the nonmoving party.  *Pachla v. Saunders Sys., Inc.*, 899 F.2d 496, 498 (6th Cir. 1990).  However, the Court does not weigh the evidence or make credibility determinations.  *Joostberns v. United Parcel Services, Inc.*, 166 F. App'x 783, 787 (6th Cir. 2006).  Moreover, the mere existence of a scintilla of evidence in support of the nonmoving party's position will be insufficient; there must be evidence on which the jury could reasonably find for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).  In other words, the court should determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.  *Id.* at 251.

**B.    Qualified Immunity**

**1.    Mansfield Defendants' Fact-Based Arguments**

As a preliminary matter, Plaintiff is correct in asserting that the Mansfield

-13-

Defendants' fact-based arguments regarding the identity of the anonymous caller are premature, given the limited discovery in which the parties have engaged to this point. The assertion that Messer did not engage in the conduct is a complete defense and does not implicate any qualified immunity analysis.  Because the parties in this matter agreed to limit preliminary discovery to the issues of qualified immunity and whether Plaintiff timely brought his claims, the issue of whether Messer "in fact" placed the call is premature.

Messer's fact-based argument, however, does not prevent him from asserting the qualified immunity defense based upon other factors.  Plaintiff's citations to the contrary are misplaced.  Those cases either (1) reiterate and apply the well-established rule that, where a defendant asserts a fact-based denial of conduct, a trial court's denial of the defendant's motion for summary judgment is not immediately appealable under *Mitchell v. Forsyth*, 472 U.S. 511 (1985), *see Giuffre v.Bissell*, 31 F.3d 1241, 1258 (3d Cir. 1994); *Kulwicki v. Dawson*, 969 F.2d 1454, n.7 (3d Cir. 1992); *Burns v. County of Cambria,Pa.*, 971 F.2d 1015, 1019 (3d Cir. 1992); *Elliott v. Thomas*, 937 F.2d 338, 341 (7th Cir. 1991), or (2) examine whether the defendant in the particular case sufficiently raised the defense to press it at trial, *see Maestas v. Lujan*, 351 F.3d 1001, 1017-18 (10th Cir. 2003) (Briscoe, J, dissenting) ("Although Lujan raised qualified immunity as an affirmative defense in his answer . . . he did not raise the issue in a motion to dismiss or a motion for summary jugdment.").

Those issues are not present in this case.  Here, the City Defendants asserted qualified immunity as an affirmative defense in their Answer to Plaintiff's Amended

-14-

Complaint.  (Doc. No. 19 at ¶ 10.)   Although the City Defendants raised the majority of their legal arguments regarding qualified immunity[2] in their reply brief in support of their motion for summary judgment, this Court permitted Plaintiff the opportunity to file a sur-reply to respond to those arguments.  Plaintiff did so.  Accordingly, as all parties have had a sufficient opportunity to respond, the legal question of qualified immunity will be considered in this case.

### 2.      First Amendment Retaliation (Counts I and II)

It is well established that "[q]ualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct."  *Reichle v. Howards,    U.S.    , 132 S. Ct. 2088, 2093 (2012).*  Courts employ a three-step analysis in reviewing claims for qualified immunity, asking whether: (1) when viewed in the light most favorable to the plaintiff, the facts establish that a constitutional violation has occurred; (2) the violation involved a clearly established constitutional right of which a reasonable person would have known; and (3) the plaintiff's evidence is sufficient to demonstrate that the defendant's conduct was objectively unreasonable in light of the clearly established constitutional right.  *Barnes v. Wright, 449 F.3d 709, 715 (6th Cir. 2006).*  In order for a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing

---

[2] The qualified immunity defense is one in which government officials are sheltered from liability unless the official's conduct violated a clearly established constitutional right.  This Court does not consider the fact-based argument regarding the identity of the anonymous caller to be a qualified immunity issue.

violates that right." _Anderson v. Creighton_, 483 U.S. 635, 640 (1987).  Once a government official raises the defense, the plaintiff bears the burden of showing that the official is not entitled to qualified immunity by alleging "facts sufficient to indicate that the act in question violated clearly established law at the time the act was committed." _Russo v. City of Cincinnati_, 953 F.2d 1036, 1043 (6th Cir. 1992).

Distilled to their simplest terms, and taking them in the light most favorable to Plaintiff, his allegations with respect to his § 1983 claims amount to this: Plaintiff exercised his First Amendment rights.  In retaliation, Messer made allegations that initiated an investigation by other authorities.  Those authorities executed a search warrant for his residence.  After the investigation, a grand jury returned an indictment. Plaintiff pleaded guilty, not to the charges in the indictment, but to misdemeanors related to his office.  Plaintiff does not, however, allege that there was insufficient probable cause to support the indictment. Nor does he challenge the search warrant. As discussed below, case law is clear that an indictment conclusively establishes probable cause in the context of § 1983.  Given this, Plaintiff's argument with respect to his § 1983 claims must necessarily be that, had Messer not made the anonymous phone call, prosecutors would not have discovered the probable cause that supported his indictment.  Plaintiff's § 1983 claims fail because there is no case law clearly establishing a constitutional right to be free from retaliatory allegations that lead to an indictment that is otherwise supported by probable cause.  There is also no clearly established case law holding that an _investigation_ can be initiated only if supported by probable cause.

-16-

Plaintiff relies on the Supreme Court's decision in *Hartman v. Moore*, 547 U.S. 250 (2006).  That reliance is misplaced, however, because, under *Hartman*, the fact that Plaintiff was eventually indicted by a grand jury is fatal to his § 1983 claims.  In *Hartman*, the plaintiff brought a *Bivens* action against, *inter alios*, several United States Postal Service inspectors, alleging that the inspectors had induced federal prosecutors to bring criminal charges against him in retaliation for his lobbying efforts related to the Postal Service.  The defendant inspectors argued that they were entitled to qualified immunity because the underlying criminal charges – which had ultimately resulted in a judgment of acquittal – were supported by probable cause.  The district court denied the motion, and the court of appeals affirmed the district court's decision.

The Supreme Court reversed and remanded.  While acknowledging that "the law is well settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out," the Court recognized that the question at issue was not whether such a right was clearly defined, but, rather, whether a lack of probable cause was an element of the plaintiff's claim: "[T]he issue before us is straightforward: whether a plaintiff in a retaliatory-prosecution action must plead and show the absence of probable cause for pressing the underlying criminal charges."  547 U.S. at 256, 256-57.  After discussing "the complexity of [proving] causation" in such cases – caused by the fact that the ultimate decision to prosecute was generally not made by the defendants, but, rather, by a prosecutor – the Court reasoned that, in cases where the plaintiff alleges that the defendant induced another individual to initiate prosecution, the

-17-

absence of probable cause was an essential element of the plaintiff's claim: "Because showing an absence of probable cause will have high probative force, and can be made mandatory with little or no added cost, it makes sense to require such a showing as an element of a plaintiff's case, and we hold that it must pleaded and proven." 547 U.S. at 265-66.

In *Barnes*, the Sixth Circuit applied the Supreme Court's reasoning in *Hartman* to conclude that the plaintiff's First Amendment retaliation claim failed as a matter of law. In that case, after an altercation with the plaintiff, the defendants – state conservation officers – initiated grand jury proceedings against the plaintiff.  The grand jury issued an indictment charging the plaintiff with various felony offenses arising out of the altercation.  The plaintiff was ultimately convicted of lesser-included offenses.  He brought suit against the officers, alleging that they had initiated his prosecution in retaliation for his criticism of their work.  The district court denied defendants' claim of qualified immunity.

The Sixth Circuit reversed the denial of qualified immunity.  As a preliminary matter, the court noted that  the plaintiff did not dispute that a grand jury had indicted him on the charges for which he was tried.  449 F.3d at 716.  The court acknowledged that, under Sixth Circuit precedent, the plaintiff's indictment foreclosed him from arguing that there was no probable cause to support his prosecution.  *Id.* (citing *Higgason v. Stephens*, 288 F.3d 868, 877 (6th Cir. 2002)).   Because the plaintiff had been indicted on the offenses at issue, and because this indictment precluded him from arguing that there was no probable cause for his prosecution, the Sixth Circuit reasoned that, under

-18-

the holding of *Hartman*, the plaintiff's First Amendment retaliation claim failed as a matter of law.  *Id.* at 720.

The decisions in *Hartman* and *Barnes*[3] establish that a lack of probable cause is an essential element of a claim of retaliatory prosecution.  Under the reasoning of these decisions, where probable cause supports a prosecution, a plaintiff's related claim of retaliatory prosecution cannot survive, and, thus, there is no clearly established constitutional right to be free from retaliatory prosecution that is otherwise supported by probable cause.[4]  In this case, because Plaintiff cannot demonstrate the absence of probable cause, his claim fails the first step of the qualified immunity analysis, as he

---

[3] The facts of this case differ from the facts in *Hartman* and *Barnes* in one way that, while not at issue in this Court's analysis, is still worth mentioning.  In those cases, the alleged wrongdoers were clearly acting under color of state law.  Here, although Plaintiff alleges that Messer made the anonymous phone call in his capacity as the chief of police, that issue would likely be the subject of much dispute were this case to proceed.  Unlike official police functions – such as drafting a police report or conducting an investigation – the conduct at issue here – making an anonymous phone call to the OIG – is conduct that any private citizen could undertake.

[4] The City Defendants contend that the Supreme Court "has specifically held that the right alleged by [Plaintiff], i.e., the First Amendment right to be free from retaliatory arrest supported by probable cause, was not clearly established."  (Doc. No. 32 at 7.) To support that argument, they cite to the Supreme Court's decision in *Reichle*. That case, however, is not on point.  In *Reichle*, the defendants were Secret Service agents who arrested the plaintiff after he touched Vice President Cheney on the shoulder at a public appearance.  The plaintiff in *Reichle* alleged that the defendants arrested him in retaliation for criticisms he lodged at the vice president during the appearance.  The Supreme Court concluded that the agents were entitled to qualified immunity because "[t]his Court has never recognized a First Amendment right to be free from retaliatory arrest that is supported by probable cause; nor was such a right otherwise clearly established at the time of [the plaintiff's] arrest."  132 S. Ct. 2093.  In this case, Plaintiff does not allege that the City Defendants arrested him in retaliation for exercising his First Amendment rights.  Rather, a review of Plaintiff's pleadings – including his Amended Complaint – reveals that his claim against the City Defendants is for inducing a prosecution in retaliation for his exercise of his First Amendment rights.

cannot show a violation of his constitutional rights.

Plaintiff attempts to avoid the holdings of *Hartman* and *Barnes* by arguing that Messer lacked probable cause to believe that Plaintiff was misusing state time at the racetrack.[5]  This argument lacks merit.  In addition to relying on speculation and unsupported assertions, this argument ignores the fact that the anonymous caller made additional allegations unrelated to Plaintiff's presence at the track.  Although the anonymous caller did assert that Plaintiff was working at the racetrack during his state working hours, the caller also alleged that Plaintiff was "conducting business on state time and with state equipment" and was "visiting local township fire departments and soliciting or conducting private business on state time."  (Doc. No. 14-1.)  Even if the question of Messer's knowledge at the time of the phone call was relevant to the issue of qualified immunity in this case – and, as discussed below, it is not – Plaintiff's argument would not preclude summary judgment, as it does not address all of the allegations made by the anonymous caller.

More importantly, however, given the case law already discussed, whether Messer had probable cause is irrelevant, as the necessary question is whether probable cause supported Plaintiff's prosecution.  *See Higgason*, 288 F.3d at 877 ( "[I]t

---

[5]  Notably, Plaintiff does not allege that the indictment in his criminal case was supported by false information, an allegation that could support a claim for malicious prosecution.  *See Gregory v. City of Louisville*, 444 F.3d 725, 758 (6th Cir. 2006) ("Police officers cannot, in good faith, rely on a judicial determination of probable cause [to absolve them of liability] when that determination was premised on an officer's own material misrepresentation to the court.").  In order to prevail on a malicious prosecution claim in this context, a plaintiff must prove that "the allegedly false . . . information was material to the finding of probable cause."  *Id*.

has long been settled that the 'the finding of an indictment, fair upon its face, by a properly constituted grand jury, conclusively determines the existence of probable cause for the purpose of holding the accused to answer.'  Therefore, because Plaintiff was indicted pursuant to a determination made by the grand jury, he has no basis for his constitutional claim.") (quoting *Ex Parte United States*, 287 U.S. 241, 250 (1932)). Here, Plaintiff does not dispute that a Richland County grand jury indicted him on various felony offenses.  (Doc. No. 14 at ¶ 25 ("On or about October 21, 2010, Plaintiff was indicted in Richland County, Ohio, on five felony grade charges of theft in office, tampering with records and theft of a motor vehicle relating to events in 2008 and 2009."); Pl. Dep. at 37:16-38:13, Doc. No. 26-6.)  The fact that Plaintiff was ultimately indicted as a result of the anonymous phone call precludes him from now arguing that Messer lacked probable cause to make the call.   *See Higgason*, 288 F.3d at 877. Finally, this Court is not aware of case law, and Plaintiff has cited to none, that requires the existence of probable cause to initiate an investigation.

Plaintiff attempts to distinguish *Higgason* because the plaintiff in *Higgason* alleged a malicious prosecution claim, not a retaliation claim.  But this is not relevant because the injury of which Plaintiff complains is his indictment and prosecution, and he has no constitutional right to be free from indictment and prosecution that are supported by probable cause.  Accordingly, Plaintiff cannot meet his burden of showing either that the act in question violated a constitutional right, or that the act was prohibited by "clearly established law at the time the act was committed."  *Russo*, 953 F.2d at 1043.

Plaintiff's First Amendment claims against the City Defendants should be dismissed.[6]

**C.    Remaining § 1983 Claims**

> **1.    Substantive Due Process (Count III)**

In his response to the City Defendants' motion for summary judgment, Plaintiff argues that these defendants violated his substantive due process by making a false allegation that instigated an investigation, which ultimately resulted in his indictment and termination.  Although the City Defendants do not squarely address the legal issue of qualified immunity with respect to this claim, this Court's view is that Plaintiff's substantive due process claim fails as a matter of law.

In order to prevail on a claim of substantive due process, a plaintiff must demonstrate that the defendant engaged in "conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty."  *United States v. Salerno, 481 U.S. 739, 746 (1987).*  Here, Plaintiff contends that making a false allegation that

---

[6] The theory of Plaintiff's claim against the City is unclear.  Plaintiff alleges that the City "clothed [Messer] with power and authority to act under color of state law" and "knew that [Messer's] edicts and acts represented official City policy."  (Doc. No. 14 at ¶¶ 57-58.)  These allegations are not sufficient to state a § 1983 claim against a municipality, as they do not identify either a policy or custom, or allege that the City's failure to train Messer amounted to deliberate indifference to Plaintiff's civil rights.  *See Blackmore v. Kalamazoo Cnty, 390 F.3d 890, 900 (6th Cir. 2004)* ("A municipality can liable under [§1983] only the plaintiff can demonstrate that his civil rights have been violated as a direct result of that municipality's custom" or if a "failure to train amounts to deliberate indifference" to such rights.) (citing *Monell v. Dep't of Soc. Servs., 436 U.S. 6587 (1978)*).  Further, it is well established that a municipality cannot be held liable under § 1983 on the basis of respondeat superior.  *Board of Cnty Comm'rs of Bryan Cnty v. Brown, 520 U.S. 397,403-04 (1997).*  Regardless of the theory underlying Plaintiff's claim against the City, however, this Court's determination that Messer's conduct did not violate a clearly established constitutional right "precludes a finding in favor of the plaintiff on his [First Amendment] claim against the City."  *Dye v. City of Warren, 367 F. Supp 2d 1175, 1190-91 (N.D. Ohio 2005) (Wells, J.).*

instigates a criminal proceeding is sufficient to satisfy the standard for substantive due process.  In other contexts, the use of false information to obtain a conviction or other sanctions has been determined to violate the Constitution.  *See, e.g., Pyle v. Kansas, 317 U.S. 213, 216 (1942)* (finding that the knowing use of perjured testimony to sustain a criminal conviction violates the Constitution); *Cale v. Johnson, 861 F.2d 943, 949-50 (6th Cir. 1988)* (finding that the inmate plaintiff's allegations that the defendant prison guards maliciously framed him for an offense that could result in the loss of his good-time credits alleged a violation of substantive due process); *Bettio v. Village of Northfield, 775 F. Supp. 1545, 1564-65 (N.D. Ohio 1991)* (finding that a village official's knowing use of false information in a municipal employee's pre-termination hearing violated the employee's constitutional rights).

In this case, however, Plaintiff fails to account for the fact that, even if the allegations in the anonymous phone call were untrue, and even if they instigated the criminal investigation, that investigation – conducted by an independent agency, and not the City Defendants – resulted in an indictment charging Plaintiff with felony offenses related to his state employment.  Plaintiff does not dispute that the Richland County prosecutor obtained the indictment against him after an investigation conducted by the Ohio State Highway Patrol.  (Pl. Dep. 43:20-45:8, Doc. No. 26-6.)  He concedes that the investigative file from the Highway Patrol investigation does not contain any information obtained from the City Defendants.  (*Id*. at 73:14-74:4.)  He concedes that he ultimately pleaded guilty to misdemeanor offenses related to his state employment.  (*Id*. at 38:14-24.)  Under these circumstances – particularly in light of Plaintiff's

indictment and guilty plea – the behavior attributed to the City Defendants does not shock the conscience, and, thus, Plaintiff's substantive due process claim fails as a matter of law.

### 2.     § 1983 Conspiracy (Count IV)

In Count Four of his Amended Complaint, Plaintiff alleges that Messer and Wernecke conspired to "engage the State of Ohio's law enforcement powers for purposes of retaliation against Plaintiff."  (Doc. No. 14 at ¶ 67.)  The Sixth Circuit has described a § 1983 conspiracy as "an agreement between two or more persons to injure another by unlawful action."  *Revis v. Meldrum*, 489 F.3d 273, 290 (6th Cir. 2007). To prevail on a conspiracy claim, a plaintiff must show that: (1) a "single plan" existed: (2) the defendant "shared in the general conspiratorial objective to deprive [the plaintiff] of his constitutional (or federal statutory) rights;" and (3) "an overt act was committed in furtherance of the conspiracy that caused injury" to the plaintiff.  *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011) (internal quotation marks omitted) (citing *Hooks v. Hooks*, 771 F.2d 935, 944 (6th Cir. 1985)).

Although the City Defendants do not squarely address the legal issue of qualified immunity with respect to this claim, Plaintiff's § 1983 conspiracy claim fails as a matter of law.  For the reasons previously discussed, Plaintiff cannot show that, even if Messer made the anonymous phone call, the call violated Plaintiff's First Amendment rights, particularly in light of Plaintiff's subsequent indictment and guilty plea.  Absent a constitutional violation, Plaintiff cannot establish a claim for conspiracy under § 1983, and Defendant Messer is entitled to summary judgment on this claim.

**D.      State Law Claims (Counts V and VI) – Statutes of Limitation**

The City Defendants' arguments that Plaintiff's state law claims – tortious

interference and civil conspiracy – are untimely lack merit.[7]  Ohio courts apply a four-

year statute of limitations to claims for tortious interference.  *Morrow v. Reminger &*

*Reminger Co., L.P.A.,*915 N.E.2d 696, 712, 183 Ohio App.3d 40, 60 (Ohio App. Ct.

2009) ("A claim for tortious interference is subject to the four-year statute of limitations

set forth in [Ohio Rev. Code §] 2305.09(D).").  The four-year period of limitations begins

to run when the events giving rise to the claim occur.  *Koury v. City of Canton*, 221 F.

App'x 379, 386 (6th Cir. 2007) (citing *Kabealo v. Huntington Nat'l Bank*, No. 94APE09-

1387, 1995 WL 141064 (Ohio App. Ct. Mar. 30, 1995)).

Under Ohio law, the elements of a claim for tortious interference with

employment are: (1) the existence of an employment relationship between the plaintiff

and the employer; (2) the defendant's awareness of such a relationship; (3) the

---

[7] The City Defendants also argue that Plaintiff's § 1983 claims are untimely
because the anonymous phone call was placed in August 2008.  This argument,
however, fails.  Although, the statute of limitations for § 1983 claims brought in Ohio
federal courts is two years, *LRL Prop. v. Portage Metro. Housing Auth*., 55 F.3d 1097,
1105 (6th Cir. 1995), a claim of First Amendment retaliation – the underlying
constitutional violation for each of Plaintiff's § 1983 claims – does not accrue until the
plaintiff knows or has reason to know of the injury that forms the basis of his claim.
*Friedman v. Estate of Presser*, 929 F.2d 1151, 1159 (6th Cir. 1991).  In this case, the
injury that forms the basis of Plaintiff's§ 1983 claims is his October 21, 2010 indictment,
which is within two years prior to the October 1, 2012 filing of Plaintiff's complaint.
Given this, the Court need not address Plaintiff's allegations that he first discovered that
the anonymous call had initiated the investigation in September 2011.  To the extent
that Plaintiff contends that he would have been entitled to the benefit of the discovery
rule – such that the relevant period of time would not have started to run until he
ascertained the origin of the investigation – his allegations are insufficient to support
such an argument because he has not explained his reasons for his delay in attempting
to discovery the information.

-25-

defendant's intentional interference with the employment relationship; and (4) injury to the plaintiff that was proximately caused by the defendant's acts. *Lennon v. Cuyahoga Cty Juvenile Court*, No. 86651, 2006 WL 1428920, *5 (Ohio App. Ct. May 25, 2006). Here, Plaintiff concedes that the anonymous phone call was placed in August 2008 – more than four years prior to filing of his Complaint on October 1, 2012.  However, Plaintiff was not terminated from his state fire inspector position until either August 12, 2011 (as alleged in Plaintiff's Amended Complaint) or May 13, 2011 (as alleged in Plaintiff's opposition to the motion for summary judgment).  Either of these dates falls well within the applicable four-year period of time.  Further, even if Plaintiff's October 2010 indictment is the event that triggered the running of the period of limitations, that date falls well within the relevant four-year period of limitations.

The City Defendants' arguments with respect to Plaintiff's civil conspiracy claim are similarly flawed.  Under Ohio law, "a claim for conspiracy cannot be made [the] subject of a civil action unless something is done which, in the absence of conspiracy allegations, would give rise to an independent cause of action." *Cully v. St. Augustine Manor*, No. 67601, 1995 WL 237129, *4 (Ohio App. Ct. Apr. 20, 1995).  In other words, "[a]n underlying unlawful act is required before a civil conspiracy claim can succeed." *Williams v. Aetna Fin. Co.*, 700 N.E.2d 859, 868, 83 Ohio St.3d 464, 475 (Ohio 1998). Accordingly, "the applicable statute of limitations for filing a civil conspiracy claim is the relevant limitations statute for the underlying cause of action." *Davis v. Clark Cty. Bd of Comm'rs*, 994 N.E.2d 905, 909, 2013-Ohio-2758 (Ohio App. Ct. 2013).  Because the cause of action underlying Plaintiff's state law civil conspiracy claim is tortious

-26-

interference with employment, the four-year statute of limitations discussed above applies to Plaintiff's civil conspiracy claim.  Because Plaintiff's claim for tortious interference accrued within four years of the filing of his Complaint, his claim for civil conspiracy is also timely.  The City Defendants are not entitled to summary judgment on the issue of the timeliness of Plaintiff's state law claims.

**E.      State Law Claims – Supplemental Jurisdiction**

Regardless of the timeliness of Plaintiff's state law claims, this Court should exercise its discretion to decline supplemental jurisdiction over these claims.  Although 28 U.S.C. § 1367(a) requires a district court to exercise supplemental jurisdiction over state law claims that "form part of the same case or controversy" as federal claims, subsection (c) of the statute permits a district court to decline to exercise supplemental jurisdiction in certain circumstances, including "if the district court has dismissed all claims over which it has original jurisdiction."  Indeed, the Sixth Circuit has observed that, where, as here, "all federal claims are dismissed before trial, the balance of considerations will usually point to dismissing the state law claims."  *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254-55 (6th Cir. 1996).  Accordingly, this Court should dismiss Plaintiff's state law claims against the City Defendants.

## IV. Conclusion

For the foregoing reasons, the Magistrate Judge recommends that: (1) the John Doe Defendants be DISMISSED; (2) Plaintiff's claims against Wernecke be DISMISSED for lack of prosecution; and (3) the City Defendants' Motion for Summary Judgment (Doc. No. 26) be GRANTED in part and DENIED in part: specifically, granted with respect to Plaintiff's § 1983 claims (Counts I, II, III and IV), and denied with respect to the Plaintiff's state law claims (Counts V and VI); and (4) the district court judge decline to exercise supplemental jurisdiction over Plaintiff's state law claims (Counts V and VI) and dismiss those claims.

s/ *Nancy A. Vecchiarelli*
U.S. MAGISTRATE JUDGE

Date: January 16, 2014

## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  28 U.S.C. § 636(b)(1).  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986).**

_____